IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| BARBARA ANN SMITH, <br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, <br> Acting Commissioner of Social Security, <br> Defendant. | ) <br> ) <br> ) <br> ) Civil No. 3:15cv246 (JRS) <br> ) <br> ) <br> ) <br> ) <br> ) |

## REPORT AND RECOMMENDATION

On September 28, 2011, Barbara Ann Smith ("Plaintiff") applied for Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"), alleging disability from lumbar fusion of vertebra, diabetes, high blood pressure, chronic obstructive pulmonary disease, depression, acid reflux, carpal tunnel syndrome, arthritis, diverticulosis and esophagitis, with an alleged onset date of September 30, 2007. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that substantial evidence does not support the ALJ's factual findings and that the ALJ applied an incorrect legal standard in finding that Plaintiff did not have a severe medically determinable impairment. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 8) at 14-25.) This matter now comes before the Court for a Report and Recommendation

pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment.[1] For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 7) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 9) be DENIED and that the final decision of the Commissioner be VACATED and REMANDED.

## I. PROCEDURAL HISTORY

On September 28, 2011, Plaintiff applied for DIB alleging disability from lumbar fusion of vertebra, diabetes, high blood pressure, chronic obstructive pulmonary disease, depression, acid reflux, carpal tunnel syndrome, arthritis, diverticulosis and esophagitis, with an alleged onset date of September 30, 2007. (R. at 169, 179). The SSA denied her claim initially on November 17, 2011, and upon reconsideration on March 16, 2012. (R. at 93, 101.) At Plaintiff's written request, the ALJ held a hearing on September 5, 2013. (R. at 26-72.) On October 28, 2013, the ALJ issued a written decision finding that Plaintiff did not qualify as disabled under the Act. (R. at 19.) On February 18, 2015, the Appeals Council denied review of the ALJ's decision, rendering it the final decision of the Commissioner. (R. at 1.)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d

---

[1] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

To establish eligibility for DIB, Plaintiff must show that she became disabled before her date last insured ("DLI"). *Bird*, 699 F.3d at 340 (citing 20 C.F.R. §§ 404-101(a), 404.131(a)). The SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (summarizing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether

the medical impairments meet or equal an impairment listed in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite her physical and mental limitations. 20 C.F.R. § 416.945(a). At step four, the ALJ ascertains whether the claimant can perform her past work given her RFC. 20 C.F.R. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. 20 C.F.R. § 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

On September 5, 2013, the ALJ held a hearing during which Plaintiff (represented by counsel), Plaintiff's daughter and a vocational expert testified. (R. at 33-72.) On October 28, 2013, the ALJ rendered his decision in a written opinion, concluding that Plaintiff did not qualify as disabled under the Act. (R. at 19.) After finding that Plaintiff met the insured status requirement through September 30, 2007 (Plaintiff's DLI), the ALJ followed the five-step sequential evaluation process outlined above to determine Plaintiff's disability. (R. at 15-19).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 30, 2007. (R. at 17.) At step two, the ALJ found that Plaintiff did not have a severe medically determinable impairment. (R. at 17-18.) Therefore, the ALJ concluded that Plaintiff did not qualify as disabled. (R. at 19.)

### IV. ANALYSIS

Plaintiff, fifty-eight years old at the time of this Report and Recommendation, previously owned a cleaning business and worked as a secretary for Salvation Army. (R. at 175, 180.) She applied for DIB, alleging disability beginning on September 30, 2007. (R. at 169.) In this appeal, Plaintiff argues that the ALJ erred by finding that she did not have any severe medically

determinable impairments. (Pl.'s Mem. at 14-26; Pl.'s Sept. 25, 2015 Reply Mem. ("Pl.'s Reply") (ECF No. 12) at 2-12.[2]) For the reasons set forth below, the Court finds that the ALJ erred in his decision.

### A. The ALJ erred by failing to assign specific weight to Dr. Sanders' opinion.

Plaintiff argues that substantial evidence in the record does not support the ALJ's decision that Plaintiff did not have severe medically determinable impairments on or before her DLI. (Pl.'s Mem. at 23-25.) In support of this claim, Plaintiff references letters from Plaintiff's relatives, medical records and Plaintiff's own testimony. (Pl.'s Mem. at 23-25.) Among these documents, Plaintiff points to Dr. Sanders' opinion that Plaintiff had "disabling" pain and severe limitations as of September 2007. (Pl.'s Mem. at 25.) Plaintiff argues that the ALJ should have given "great weight" to Dr. Sanders' opinion, because he had treated Plaintiff for twenty years or more. (Pl.'s Mem. at 25.) Defendant responds that the ALJ properly evaluated Dr. Sanders' opinion. (Mem. in Supp. of Def.'s Mot. for Summ. J. and in Opp. to Pl.'s Mot. for Summ. J. ("Def.'s Mem.") (ECF No. 9) at 20-24.)

When the ALJ determines whether the claimant has a severe medically determinable impairment, or combination of impairments which would significantly limit the claimant's

---

[2] Plaintiff argues that the Court should disregard Defendant's Motion for Summary Judgment, because Defendant did not comply with the Court's scheduling order (ECF No. 6). (Pl.'s Reply at 1.) The Court ordered Defendant to file her Motion for Summary Judgment no later than sixty days after docketing of her Answer. Defendant filed her Answer (ECF No. 5) on June 29, 2015, resulting in Plaintiff's Motion for Summary Judgment being due on August 28, 2015. On August 27, 2015, Defendant filed a document styled, "Memorandum in Support of Defendant's Motion for Summary Judgment in Opposition to Plaintiff's Motion for Summary Judgment" (ECF No. 9). On September 11, 2015, Defendant refiled the identical document, styled "Defendant's Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion for Summary Judgment and Brief in Support Thereof" (ECF No. 11), upon direction from the Clerk's Office to docket a separate entry for Defendant's Opposition to Plaintiff's Motion for Summary Judgment. The Court accepts Defendant's Motion for Summary Judgment as timely filed, because she effectively filed the Motion on August 27, 2015.

ability to do basic work activities, the ALJ must analyze the claimant's medical records. 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the claimant's treating physicians, consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d).

When considering a treating source's opinion, the ALJ must "explain in the decision the weight given to the opinions of a treating source . . . , as the [ALJ] must do for any opinions from nontreating sources and other nonexamining sources." 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii). Unless the Commissioner "has sufficiently explained the weight [s]he has given to obviously probative exhibits, to say that h[er] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Arnold v. Sec'y of Health, Ed. & Welfare*, 567 F.2d 258, 259-60 (4th Cir. 1977) (quoting *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974)) (internal quotation marks omitted). The ALJ must assign specific weight "to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . source's medical opinion and the reasons for that weight." SSR 96-2p. Accordingly, a reviewing court cannot determine if substantial evidence supports an ALJ's findings "unless the [ALJ] explicitly indicates the weight given to all the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (citations omitted).

In this case, the ALJ discussed Plaintiff's treatment records with Dr. Sanders. (R. at 18-19.) The ALJ acknowledged that "Dr. Sanders indicated that [Plaintiff]'s lumbar disc disease

first presented itself in September 2007," but noted that Plaintiff did not have surgery until December 2008. (R. at 18.) However, the ALJ did not assign any weight to Dr. Sanders' opinion, and the Court finds that the ALJ erred by failing to do so. The ALJ found that Plaintiff did not have any severe medically determinable impairment before her DLI, despite Dr. Sanders' opinion that Plaintiff had lumbar disc disease since September 2007. The Court cannot determine whether substantial evidence supports the ALJ's decision without knowing how much weight the ALJ afforded to Dr. Sanders' opinion and why he chose to do so. *See Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling."). Therefore, the Court recommends remand.

### B. The ALJ's misstatement regarding Plaintiff's December 2007 MRI warrants a remand.

Plaintiff argues that substantial evidence does not support the ALJ's finding that Plaintiff had a negative "back MRI" in December 2007. (Pl.'s Mem. at 15-16; R. at 18.) Defendant responds that the ALJ made a harmless typographical error with respect to the December 2007 MRI. (Def.'s Mem. at 15-16.)

As Plaintiff points out and Defendant concedes, the ALJ erred by stating that Plaintiff had a negative back MRI in December 2007, because the MRI examined Plaintiff's left knee. (R. at 424.) Plaintiff's knee MRI from December 2007 showed grade II degenerative signal in the posterior horn of the medial meniscus, but otherwise normal results. (R. at 424.) Given that the ALJ based his decision purely on the absence of objective medical abnormalities, the Court cannot agree with Defendant that the ALJ's misstatement with respect to Plaintiff's MRI was harmless. *See Shinseki v. Sanders*, 556 U.S. 396, 410-12 (2009) (finding that the error cannot be found harmless when a likelihood of a different result exists).

Without proper fact-finding by the ALJ, the Court cannot determine whether substantial evidence supports the ALJ's decision at step two. "Assessing the probative value of competing evidence is quintessentially the role of the fact finder. [The Court] cannot undertake it in the first instance." *Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011). Therefore, the Court recommends remand for further fact-finding.[3]

### C. The Court will not review the ALJ's assessment of lay opinions.

Plaintiff argues that substantial evidence does not support the ALJ's decision, because the ALJ failed to properly consider a number of statements by Plaintiff and her family regarding the severity of Plaintiff's symptoms. (Pl.'s Mem. at 15, 16-17; Pl.'s Reply at 6-7.) The Court will not review the ALJ's assessment of these lay opinions, because they could not have played a role in the ALJ's step two analysis.

At step two of the five-step sequential evaluation, the ALJ only considers medical evidence, as the SSA regulation clearly provides that the claimant's "impairment must result from anatomical, physiological or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id.*

Here, the ALJ denied Plaintiff's claim due to the lack of a severe medically determinable physical or mental impairment. (R. at 18-19.) The ALJ found that no objective medical signs or laboratory findings substantiate the existence of a severe medically determinable impairment

---

[3] Plaintiff further argues that the letters submitted by Plaintiff and her family to the Appeals Council warrant a remand, because they are new and material. (Pl.'s Reply at 6-7.) However, having already found grounds for remand, the Court need not address this alternative argument raised by Plaintiff.

through the DLI. (R. at 17-19.) The ALJ did not need to consider or discuss lay person testimony or statements to make a finding at step two. *See* SSR 96-4p ("[R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; *i.e.*, medical signs and laboratory findings."). Therefore, the Court will not review the ALJ's assessments of the opinions from Plaintiff and her family members.

### D. Substantial evidence in the record supports the ALJ's statement with respect to Plaintiff's March 2008 MRI.

Plaintiff claims that substantial evidence does not support the ALJ's finding that Plaintiff's March 28, 2008 MRI revealed "degenerative disease with disc protrusions . . . as well as multilevel facet arthropathy." (Pl.'s Mem. at 16; R. at 18.) Specifically, Plaintiff argues that the ALJ's summary of the MRI findings omits certain details about possible nerve impingement and a narrowing neural foramen. (Pl.'s Mem. at 16; R. at 253.)

Although the ALJ did not discuss in depth the neurological findings of the MRI, his findings are consistent with the medical record in this case. (R. at 18, 253.) For example, an EMG[4] conducted on April 15, 2008, showed "normal" nerve condition studies. Therefore, substantial evidence in the record supports the ALJ's summary of the March 2008 MRI.

### E. The ALJ gave proper retroactive consideration to the evidence in the record dated after Plaintiff's DLI.

Plaintiff argues that the ALJ erred by failing to give retrospective consideration to the post-DLI evidence as required by *Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337 (4th Cir. 2012).

---

[4] "Electromyography (EMG) is a diagnostic procedure to assess the health of muscles and the nerve cells that control them (motor neurons)." *Test and Procedures — Electromyography (EMG)*, MAYO CLINIC, http://www.mayoclinic.org/tests-procedures/electroconvulsive-therapy/basics/definition/prc-20014183 (last visited Jan. 15, 2016).

(Pl.'s Mem. at 16-23; Pl.'s Reply at 4-7.) Specifically, Plaintiff contends that the ALJ failed to evaluate Plaintiff's post-DLI medical records and lay opinions, and failed to consider their possible linkage to Plaintiff's pre-DLI condition. (Pl.'s Mem. at 23.) Defendant responds that substantial evidence supports the ALJ's evaluation of the Post-DLI evidence in the record. (Def.'s Mem. at 17-20.) The Court finds that the ALJ properly evaluated the post-DLI evidence in Plaintiff's record, as mandated by the Fourth's Circuit's holding in *Bird*.

In *Bird*, the Fourth Circuit held that the ALJ "must give retrospective consideration to medical evidence created after a claimant's [DLI] when such evidence may be *reflective of a possible earlier and progressive degeneration*." 699 F.3d at 345 (internal quotation marks omitted) (emphasis added). The ALJ in *Bird* denied the claimant's claim, because the record did not have any pre-DLI medical evidence and a Veterans Administration decision finding him one-hundred percent disabled did not become effective until fifteen months after the claimant's DLI. 699 F.3d at 340. The ALJ also assigned little weight to a psychological report created two years after the claimant's DLI, because the report failed to reflect the claimant's pre-DLI conditions. *Id.* In reversing the District Court's decision affirming the ALJ, the Fourth Circuit observed that the claimant's post-DLI medical records indicated that the claimant experienced symptoms of impairments before his DLI. *Id.* at 341. Because the evidence linked the claimant's present conditions to symptoms that he experienced before his DLI, the Fourth Circuit concluded that the ALJ erred by not giving them retrospective consideration. *Id.* at 342.

The facts here differ from those in *Bird*. Unlike the ALJ in *Bird* who did not have any pre-DLI medical evidence in the record, the ALJ had a number of pre-DLI medical records to examine and sufficiently discussed them in his decision. (R. at 17-18.) The ALJ recognized that Plaintiff's medical records from Midlothian Family Practice "reflect that [Plaintiff] complained

10

of bilateral knee pain in March 2007." (R. at 18.) The ALJ also noted Dr. Sanders' opinion that Plaintiff's lumbar disc disease first presented itself in September 2007. (R. at 18.) The ALJ explained that Plaintiff did not require surgery until December 2008, and that physical examinations showed unremarkable findings. (R. at 18.) Consequently, the ALJ sufficiently discussed Plaintiff's pre-DLI medical records in support of his conclusion that Plaintiff did not have any severe medically determinable impairment before her DLI.

Further, the ALJ properly analyzed Plaintiff's post-DLI medical evidence under *Bird*. Upon examination of this evidence, the ALJ concluded that the evidence did not support a finding that Plaintiff's condition was "severe" under the regulations during her pre-DLI period. (R. at 17-18.) The ALJ considered a sizable amount of post-DLI medical evidence, some of which arose well over one year from Plaintiff's DLI. (R. at 18.) For example, the ALJ noted that Plaintiff reported to her neurologist in March 2008 that she had experienced leg pain for about six months. (R. at 18.) The ALJ acknowledged that in September 2008, Plaintiff's orthopedist noted that her pain had gotten worse over the preceding year. (R. at 18.) The ALJ also noted that Plaintiff underwent a treatment regimen of painkillers and injections in her troubled knee after her DLI. (R. at 18, 512.) The ALJ further noted that Plaintiff underwent back surgery on December 30, 2008, in an effort to correct her condition and relieve her pain. (R. at 300.) Thus, the ALJ evaluated Plaintiff's post-DLI medical records that may be "reflective of a possible earlier and progressive degeneration." *Bird*, 699 F.3d at 345. Therefore, Plaintiff's attempt to draw a parallel between this case and *Bird* does not pass muster, and the ALJ's retroactive analysis with respect to post-DLI evidence does not require remand.

11

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 7) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 9) be DENIED and that the final decision of the Commissioner be VACATED and REMANDED.

Let the Clerk forward a copy of this Report and Recommendation to Senior United States District Judge James R. Spencer and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: February 22, 2016